KATHRYN M. MAHONEY *vs.* JAMES P. MAHONEY.

AUGUST 4, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This petition for absolute divorce is before us on petitioner's sole exception to the decision of the trial justice denying and dismissing her petition on the ground of extreme cruelty, all other exceptions being waived.

At the hearing in the superior court the testimony was voluminous. The following salient facts appear therefrom. The petition was filed on October 15, 1947. At the time of hearing in the superior court petitioner was thirty-four years of age and the respondent was forty-three. The parties were married on June 10, 1936 and had one son, who was eleven years old at the time of trial. Petitioner's testimony is to the effect that the respondent never took a drink in his life, never struck her and was never guilty of any physical violence, but that he pursued a willful course of conduct toward her that was calculated to undermine her health by using profane and obscene language, addressed to her on numerous occasions, which reflected upon her chastity and moral character. The use of some of this language was corroborated by several of her witnesses.

Petitioner claimed that as a result of such continuous name calling and indecent language she suffered a nervous breakdown, developed a high blood pressure, lost about twenty pounds in weight, and became afflicted with a nervous twitch or tic in her face. Since 1944, however, she had no medical attention except for her high blood pressure and nervousness, for which no medication was prescribed except certain sedatives. She was treated by Dr. Arnold H. Hahn, an osteopathic physician, on several occasions after her petition for divorce had been filed and after her husband had left the house, but consulted no other doctor during that period. Petitioner further testified that on Tuesdays and Thursdays she attended bingo parties; that on Wednesday nights she played in a band; that occasionally on

Saturdays she would attend the meeting of a society in Pawtucket; and that she usually went to these affairs without her husband as he did not want to go anywhere with her.

Mrs. Ada Tourgee, a witness for petitioner, testified that she had known the Mahoneys all the years of their married life and that she sometimes accompanied petitioner to the bingo parties; that after such parties they would stop at a cafe to have a few beers and would go to a restaurant to have something to eat; that petitioner played cards four or five days a week; and that she herself did not always play cards when she visited the Mahoney home because she could not afford to play, but she knew that Mrs. Mahoney and her friends were gambling. She corroborated petitioner's testimony about some of the obscene language addressed by respondent to petitioner.

Doctor Arnold H. Hahn provided the only medical testimony for the petitioner. The record of his treatment contains her medical history but nowhere is there any statement as to family difficulties nor any claim with reference to her husband's conduct.

Respondent testified that he had never struck his wife and emphatically denied that he had ever employed the language attributed to him by his wife and her witnesses. He stated that from May to October 10, 1947 his wife was away from home four or five nights a week; that on Tuesdays and Thursdays she attended bingo parties, on Wednesday she played in a band in Pawtucket, on Saturday night she would often attend a gathering in Pawtucket, and on Sunday night she played on a bowling team; that she never came home from any of these parties before 1 or 1:30 a.m.; that upon her return he could smell liquor from her; that when he would chide her for her conduct and for being out so late, she would tell him that she would go and come when she liked, do what she liked, go with whom she liked and have what company she liked. He also testified that he took care of his young son all the time she was out and

that the son had been under his care seven nights a week since his birth.

Respondent further testified that on October 9, 1947 when petitioner and Mrs. Tourgee went to a certain cafe she did not return until quarter past two in the morning. He then chided her for coming home at such a late hour, and on other occasions he spoke to her in a similar way but never used such language as his wife and her witnesses testified to. Respondent attributed his marital difficulties and his occasional loss of temper to his wife's conduct and to the presence in his home for about a year before the petition for divorce was filed of a professional singer whom he first met in Providence and whom he and his wife visited later in a veteran's hospital in New York. On that occasion he claimed he felt a deep sympathy for him and invited him to come to Providence and stay at their home during his convalescence. This invitation was accepted and the guest came to visit them in November 1946 and, although respondent expected him to stay only a few weeks, he remained there until October 1947.

Respondent testified further that when this guest first came to his home his wife gave him his bed and that he, the respondent, had thereafter slept in a day bed; that in May 1947 he came home and, finding his wife was out, he went to a cafe where she, the guest and Mrs. Tourgee were drinking highballs. He then chided her for her conduct and went home, and when his wife and the guest returned he said to her: "What time is this to get in?" He then turned to the guest and told him to get out of the house, saying: "If you and my woman are in cafes in the afternoon, that isn't a nice thing to do." His wife then got respondent's suitcase, put some of his clothes in it and ordered him out of the house, saying that otherwise she would go with the guest. Because of his child, he "cooled off" and said no more.

On another occasion when he returned home his wife was in pajamas in the bedroom where the guest who was

also in pajamas was asleep in the other bed. On another evening his wife and the guest were in pajamas in the kitchen drinking beer, and on October 10, 1948 he saw his wife kissing the guest in the bedroom. As to the facial tic, the respondent claimed that his wife had this affliction at the time of her marriage, due to a goiter condition concerning which she said: "I don't want to have an operation, it is too serious." As to the same nervous tic, the medical report of Dr. Hahn refers to it as follows: "tic of rt side (From Apoplexy 1944)."

Several witnesses corroborated the respondent's testimony as to his wife's conduct and habits and presented further testimony to the effect that petitioner habitually played cards for money and had lost as much as $10 a day for a week at a time; that the guest referred to above was at the Mahoney home practically every day from the time respondent left there until shortly before the hearing; and that on one occasion when Mrs. Mahoney was attending a party at which drinks were being served, she was observed kissing the guest and the guest "was caressing her all night."

In a written decision the trial justice carefully and at considerable length analyzed and discussed the evidence and found that the respondent had not been proven guilty of any offense which constituted a violation of the marriage covenant, and he called attention to the fact that both petitioner and respondent testified that respondent had never been guilty of any physical violence. In commenting upon the conduct of the petitioner and referring to her association with the guest at her home, the trial justice said: "Little by little, consciously or unconsciously, he supplanted himself in the affection of the petitioner * * *. It wasn't right, even with all of the exonerations of the simpleminded and unsuspecting respondent. Mrs. Mahoney's four or five nights absence from home for bingo, band rehearsal, theaters, always or nearly always ending up in cafes about midnight, that, coupled with the card games played at her home for substantial stakes before supper and after supper,

had turned the Mahoney home into something other than the home and had robbed it of the atmosphere where a father and mother and young child could enjoy the privacy, comforts and blessings of a home."

It is well settled in this state that a divorce will be permitted only upon affirmative convincing evidence that the petitioner is without fault and that the respondent has been guilty of an offense which is destructive of the marriage contract. *McLaughlin* v. *McLaughlin,* 44 R. I. 429; *Hurvitz* v. *Hurvitz,* 44 R. I. 478; *Grimes* v. *Grimes,* 61 R. I. 198; *Smith* v. *Smith,* 69 R. I. 403. In the instant case the evidence was decidedly conflicting. Whatever might be said of the conduct of the respondent, it is nevertheless clear that the trial justice found expressly that the petitioner had not established affirmatively that she was free from fault, in accordance with her burden under the above-cited cases. Upon a careful consideration of all the evidence we cannot say that the decision of the trial justice is clearly wrong. In such circumstances we cannot disturb it. *White* v. *White,* 69 R. I. 116; *Biron* v. *Biron,* 71 R. I. 329.

The petitioner's exception is overruled, and the case is remitted to the superior court for further proceedings.

*Irving Brodsky,* for petitioner.

*J. Joseph Nugent,* for respondent.